```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT BLUEFIELD
```

STEVE W. WRAY,

     Plaintiff,

v.                                    CIVIL ACTION NO. 1:04-0942

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.

### **MEMORANDUM OPINION**

#### I. Introduction

By Standing Order, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge VanDervort submitted to the court his Proposed Findings and Recommendations on July 20, 2005, recommending that the court deny the plaintiff's motion for judgment on the pleadings, grant the defendant's motion for judgment on the pleadings, affirm the final decision of the Commissioner, and dismiss this matter from the Court's active docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted ten days, plus three mailing days, in which to file any objections to Magistrate Judge VanDervort's Proposed Findings and Recommendation. The failure of any party to file such objections within the appropriate time frame constitutes a

waiver of such party's right to a de novo review by this court. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985).  On June 7, 2005, the plaintiff filed objections to the magistrate judge's Proposed Findings and Recommendation.  With respect to those objections, the court has conducted a de novo review of the record.

## II. Standard of Review

When reviewing the decision of the Administrative Law Judge ("ALJ"), the sole issue before the court is whether the final decision of the ALJ is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence has been defined by the Court of Appeals for the Fourth Circuit as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. at 776 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir, 1966)).  In addition, the court must determine whether the ALJ's legal conclusions are correct.  Hays v. Sullivan, 907 F.3d 1453, 1456 (4th Cir. 1990). If the ALJ's decision is supported by substantial evidence, then the court must accept and affirm that decision.  Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981).

The ALJ must provide reasons to support his decision that are based on adequate evidence within the record.  Smith v.

2

Califano, 592 F.2d 1235, 1236 (4th Cir. 1979). The court weighs four elements of proof in determining whether the ALJ's decision is supported by substantial evidence: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history and present age." Blalock, 483 F.2d at 776. The hearing officer is charged with sitting as the trier of fact and resolving conflicts in the evidence. Id. at 777.

### III. Analysis

The Fourth Circuit has articulated a sequential evaluation process by which the merit of social security claims is assessed:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). If an individual is found not to be disabled at any step, further inquiry is unnecessary. Id. at 265.

A. *The ALJ's treatment of plaintiff's mental deficiencies was supported by substantial evidence*

The plaintiff's first objection is to the ALJ's treatment of his mental deficiencies. Objections at 1-2. He asserts that the ALJ erred in concluding that he did not lack the requisite deficits in adaptive functioning to be deemed mentally retarded under the regulations. As explained below, plaintiff's argument is without merit.

According to the applicable regulations:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\* \* \*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. As this court explained in Slaughter v. Barnhart, Civil Action No. 1:03-0058 (S.D.W.V. March 29, 2004), aff'd, 124 Fed. Appx. 156 (4th Cir. 2004) (unpublished), the Commissioner revised § 12.00 to provide that the introductory language to § 12.05 must be read in

conjunction with § 12.05C.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50,746, 50,776 ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").  Therefore, in order to demonstrate that one meets the criteria for mental retardation under § 12.05C, he or she must have: 1) a valid verbal, performance, or full scale IQ of 60 through 70; 2) a physical or other mental impairment imposing an additional and significant work-related limitation of function; and 3) significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period.

In arguing that substantial evidence does not support the ALJ's finding that plaintiff did not have the requisite deficits in adaptive functioning, plaintiff points to certain parts of the record which he contends demonstrate a lack of adaptive functioning.  However, a review of the entire record confirms that the ALJ fully considered plaintiff's mental impairments and that his treatment of them was supported by substantial evidence.  The ALJ found that plaintiff suffered from the severe impairment of borderline intellectual functioning.  Tr. at 28.  In summarizing the evidence concerning plaintiff's mental impairment, the ALJ noted:

5

At the hearing, claimant testified that he received formal schooling through the sixth grade, receiving very poor grades while in school, and failing the first, third, and seventh grades. He stated that he never learned to read but he was able to write love letters to his wife at one time. . . . Counsel for claimant argued that, based on the psychological consultative evaluation, it appeared that claimant was intellectually unable to perform even very simple, unskilled work. . . . He stated that his welfare caseworker urged him to go to work but he applied for disability instead. He stated that he quit school at the age of fifteen while in the seventh grade, alleging an inability to write or read well. Claimant acknowledged, however, that he had a valid driver's license, having passed the written examination in Michigan on his first attempt. He stated that his mother had helped him study the book. Claimant stated that he has considered returning to school, and does attempt to read the newspaper.

\* \* \*

Consultative psychological evaluation was performed on October 16, 2003. Evaluation consisted of clinical interview, mental status examination, and administration of several testing instruments including the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III). Claimant voiced complaints of chronic pain and depressive symptoms, reporting bulging discs with arthritis in the spine. He described intense pain that shoots down his back and legs, contending that he stayed in pain, and could not walk long distances or sleep because of pain. Claimant reported no energy and frequent nervousness. It was noted that there were no medical records available for review at the time of the evaluation. Claimant denied inpatient or outpatient mental health treatment, but reported a logging injury in 1996 to the left arm and a back injury at that time, which he described as continuing to cause pain. Claimant reported schooling through the sixth grade with poor grades, LD classes, and speech problems. Testing results were considered valid and reliable, resulting in Verbal IQ of 76, Performance IQ of 69, and Full Scale IQ of 70. Diagnostic impression included borderline intellectual functioning, major depressive disorder, and anxiety disorder. It was concluded that claimant had significant impairment in his ability to

6

> sustain concentration and persistence in completing tasks.  Depressed mood and slow processing speed were also observed as well as problems with anxiety and irritability.  The examiner stated that claimant's ability to interact and relate to others was markedly impaired and that claimant would have difficulty interacting with co-workers and supervisors.

Tr. at 19, 21.  Based on the foregoing, it is clear that the ALJ carefully considered plaintiff's mental limitations.

The ALJ's decision is replete with evidence to support his conclusion that plaintiff had no evidence of adaptive deficits prior to age 22.  First, the ALJ noted that plaintiff was diagnosed with borderline intellectual functioning, not mental retardation.  Tr. at 23, 264.  She further noted that plaintiff's rather extensive employment history was further evidence that he functioned in the borderline intellectual range.  Tr. at 23.  The ALJ pointed to the fact that plaintiff was able to perform mechanical work on vehicles in his spare time, engage in logging and cutting wood, and follow instructions for hydroseeding, all of which are inconsistent with mental retardation.  Tr. at 23.  The ALJ also mentioned that plaintiff had passed a written driver's license examination on his first attempt, even though his mother helped him study.  Tr. at 24.  Finally, the ALJ stated that plaintiff had held a number of jobs and he testified that his welfare caseworker told him he should return to work but that he decided to apply for disability instead.  Tr. at 25.

In light of the above evidence it is clear that the ALJ considered the plaintiff's mental limitations fully when determining that his mental impairments did not rise to the level of mental retardation under the applicable regulations. In reaching this conclusion, the ALJ considered the intelligence testing results, life experiences, and other indicia of mental functioning of the plaintiff. Those indicators showed that the plaintiff lacked the requisite deficits in adaptive functioning required by the listing and indicated to the ALJ that the plaintiff was functioning at a higher level than he claimed. Accordingly, the ALJ's decision in this regard is supported by substantial evidence and plaintiff's objection thereto is OVERRULED.

B.  *The ALJ's treatment of the examination by Elizabeth Jennings was supported by substantial evidence*

In October 2003, plaintiff was evaluated by Elizabeth Jennings, M.A., a licensed psychologist. Plaintiff objects that the ALJ erred in discounting the opinions of Ms. Jennings. Plaintiff's argument is without merit.

Regarding the treatment of medical opinions, the regulations provide:

> Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4)consistency, (5) specialization, and (6) various other factors.

> Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."

20 C.F.R. § 416.927(d)(2). The regulations go on to state that more weight will be given to the medical opinion of an examiner than a non-examiner and more weight will be given to a treating source than a non-treating source (such as an examiner or non-examiner). In this case, there is no dispute that Ms. Jennings was <u>not</u> a treating source. <u>See</u> 20 C.F.R. 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a non treating source.").

A review of the ALJ's decision makes clear that his treatment of Ms. Jennings' opinion was supported by substantial evidence. In summarizing her findings, the ALJ stated:

> Consultative psychological evaluation was performed on October 16, 2003. Evaluation consisted of clinical interview, mental status examination, and administration of several testing instruments including the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III). Claimant voiced complaints of chronic pain and depressive symptoms, reporting bulging discs with arthritis in the spine. He described intense pain that shoots down his back and legs, contending that he stayed in pain, and could not walk long distances or sleep because of pain. Claimant reported no energy and frequent nervousness. It was noted that there were no medical records available for review at the time of the

> evaluation. Claimant denied inpatient or outpatient mental health treatment, but reported a logging injury in 1996 to the left arm and a back injury at that time, which he described as continuing to cause pain. Claimant reported schooling through the sixth grade with poor grades, LD classes, and speech problems. Testing results were considered valid and reliable, resulting in Verbal IQ of 76, Performance IQ of 69, and Full Scale IQ of 70. Diagnostic impression included borderline intellectual functioning, major depressive disorder, and anxiety disorder. It was concluded that claimant had significant impairment in his ability to sustain concentration and persistence in completing tasks. Depressed mood and slow processing speed were also observed as well as problems with anxiety and irritability. The examiner stated that claimant's ability to interact and relate to others was markedly impaired and that claimant would have difficulty interacting with co-workers and supervisors.

Tr. at 21. In determining the weight to give Ms. Jennings' opinion, the ALJ gave very specific reasons for his decision to afford it little weight:

> Turning to the issue of mental impairment, there is no record of either treatment or complaints for any depressive or anxiety disorder. Although claimant voiced complaints associated with depressive symptomatology during the consultative examination with William Steinhoff, M.A.[*], obtained at the request of counsel prior to the hearing, such as inability to concentrate and frequently interrupted sleep, it is noted that at an evaluation two months earlier as a new patient complaining of back pain, he denied any difficulties with depression or any mental impairment. Likewise, although it does appear that claimant's educational background is somewhat deficient and that reading and writing skills may be minimal, it is noteworthy that he was not diagnosed by the consultative examiner with mild mental retardation; rather, he was found to be functioning within the

---

[*] In her decision, the ALJ refers to this report as that of Mr. Steinhoff. The evaluation was conducted by Ms. Jennings in the office of Mr. Steinhoff. Tr. at 260-65.

10

> borderline range, a conclusion which is supported by his rather extensive employment history, itself contraindicative of functioning in the mentally retarded range. His ability to repair vehicles, engage in logging and woodcutting, follow instructions for hydroseeding, would not seem to be consistent with mental retardation. The undersigned has fully considered the opinion of the consulting examiner that claimant would have seriously limited to no abilities to relate to co-workers or supervisors and would have generally poor abilities to make mental work-related adjustments; however, great weight has not been accorded to these conclusions for the reasons discussed below. The claimant has seemed to function well in work settings and there was no indication he lost jobs because he was unable to get along. When he had to work, and a job was available, he would work. There is a suspicion of secondary gain to some of the injuries claimed that terminated prior jobs.
>
> * * *
>
> From a psychological perspective, there is no evidence of impairment which would preclude all work activity since mental functioning is generally within normal limits despite some symptoms of depression. The undersigned has fully considered the conclusions of the consultative examiner, Mr. Steinhoff, that claimant is essentially incapable of any gainful employment through a combination of mental and physical impairments. If is first of all noted that none of these conclusions were based on a longitudinal history or treatment relationship with claimant, but were the result of a one-time evaluation obtained at the request of counsel in anticipation of the disability hearing. In fact, conclusions from any treating source that claimant is unable to engage in any sustained activity are notably lacking. Although claimant has had a treatment history with several physicians, no such statement of inability to work appears. Claimant has had a lengthy relationship with a welfare department case worker and the claimant himself reports that the caseworker has told him to work.
>
> It fully appears that the conclusions rendered by Mr. Steinhoff lack attendant assurance available through medically recognized objective diagnostic techniques and are weighed accordingly. None is the result of a

11

> longitudinal treating relationship, and all rest heavily on subjective assertions of chronic pain and purported inability to interact appropriately with others. Although claimant voiced complaints of debilitating back pain, MRI results have shown no more than mild degenerative changes. It must be concluded, therefore, that Mr. Steinhoff relied heavily on claimant's overstated complaints and self-imposed limitations in reaching his conclusions. No other explanation for these limitations was offered nor was any additional evidence provided in support of these findings.
>
> Such opinions are conclusory, and were apparently based primarily upon self-reported symptoms of emotional distress and inability to interact appropriately with others. The undersigned must conclude that the opinion that claimant is precluded from working is entitled to little, if any, weight since it is not supported by medical signs and laboratory findings or adequate explanations and is inconsistent with the record as a whole. In addition, conclusions that claimant should be considered "disabled" are entitled to little weight for the reasons enumerated as well as the fact that whether claimant is under a "disability" is an issue reserved to the Commissioner.

Tr. 23-24. The foregoing analysis on the part of the ALJ confirms that he properly evaluated Ms. Jennings' opinion in accordance with the factors outlined under 20 C.F.R. § 416.927(d)(2).

With respect to the first factor, length of the treatment and frequency of the evaluation, the ALJ noted that Ms. Jennings had seen plaintiff only one time for the purpose of obtaining benefits. As to the second factor, as noted above, there was no treatment relationship. With respect to the specialization factor, the fact that Ms. Jennings has a masters degree is relevant.

As to supportability and consistency, the ALJ gave very specific reasons for the weight he gave Ms. Jennings' opinion. He noted, among other things, that she: (1) based her opinions largely on plaintiff's subjective complaints; and (2) did not rely on any mental behavior history. With respect to the evidence in the record undermining Ms. Jennings' opinion, the ALJ pointed out that: plaintiff had not sought mental health treatment; plaintiff did not list depression or anxiety as an impairment at a medical evaluation two months earlier; that Ms. Jennings' opinions were largely contradicted by other evidence in the record; and the failure of any treating source to find that plaintiff was unable to work or had limitations as severe as those suggested by Ms. Jennings.

Although plaintiff does not agree with the ALJ's ultimate findings, he has cited no legal authority which mandates that controlling weight be given to a one-time examining source whose opinion has been evaluated under and is called into question by the 20 C.F.R. § 416.927(d)(2) factors. This is because no such authority exists. Even the opinion of a treating source may be rejected if it is inconsistent with other substantial evidence of record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); see also Hawkins v. Massanari, 2001 WL 1191107 (W.D.N.C. 2001) (finding no error in ALJ's rejection of opinion of one-time

13

consultative examination where ALJ properly evaluated opinion pursuant to 20 C.F.R. § 416.927(d)(2)).

The role of this court on review is to determine whether substantial evidence supports the ALJ's decision. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Upon review of the record, the court finds ample evidence supporting the ALJ's conclusion to give Ms. Jennings' opinion little weight. Accordingly, plaintiff's objection is OVERRULED.

C. *The ALJ's hypothetical question posed to the vocational expert was supported by substantial evidence*

Plaintiff's final objection is to the adequacy of a hypothetical question posed to the vocational expert. Plaintiff asserts that the ALJ erred in failing to include any of the limitations included in Ms. Jennings' evaluation.

"To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments." Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). However, the ALJ has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986); see also Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

As noted above, the ALJ gave very specific and detailed reasons for the weight he gave Ms. Jennings' opinion. As such, he was under no obligation to include any of her recommended limitations. Accordingly, the court finds that the ALJ's decision, when framing questions for the vocational expert, to exclude limitations suggested by Ms. Jennings was supported by substantial evidence.

For the reasons set forth above, the court **OVERRULES** the plaintiff's objections to Magistrate Judge VanDervort's Proposed Findings and Recommendation. Accordingly, the court adopts his Proposed Findings and Recommendation and **ORDERS** as follows:

1. Plaintiff's motion for judgment on the pleadings is **DENIED**;

2. Defendant's motion for judgment on the pleadings is **GRANTED;**

3. The final decision of the Commissioner is **AFFIRMED**; and

4. This case is **DISMISSED** from the court's active docket.

The Clerk is directed to forward a copy of this Memorandum Opinion to Magistrate Judge VanDervort and to forward copies to counsel of record.

**IT IS SO ORDERED** this 29th day of September, 2005.

ENTER:

David A. Faber
Chief Judge